UNITED STATES DISTRICT COURT
District of Massachusetts

CIVIL ACTION NO. 04 11892 NG

MAGISTRATE JUDGE _____

KEVIN HURLEY,
Plaintiff

v.

RANGELEY LAKE DEVELOPMENT
CO., LLC, PAUL PECK, &
PERRY D. WILLIAMS

COMPLAINT and DEMAND FOR JURY TRIAL

RECEIPT #_____
AMOUNT $ 50
SUMMONS ISSUED ___
LOCAL RULE 4.1 ___
WAIVER FORM ___
MCF ISSUED ___
BY DPTY. CLK. ___
DATE 8/30/04

## INTRODUCTION

Plaintiff, Kevin Hurley, by his attorneys, brings this Complaint against Defendants and all others acting in concert, or otherwise participating with them or acting in their aid or behalf, seeking the protection of and redress from deprivation of his rights. This Honorable Court may exercise subject matter jurisdiction over the matters alleged in this Complaint pursuant to 28 USCS § 1331; 28 USCS § 1343; 42 USCS §§ 2000e-1 through 2000h-6; and 42 USCS § 2000e-5(g). The Court may exercise supplemental subject matter jurisdiction over all of Plaintiff's state law claims under 28 USCS. § 1367(a) including, Breach of Contract, Intentional Infliction of Emotional Distress, violation of their duties of good faith and fair dealing, Detrimental Reliance, Wrongful Termination, Discrimination, Misrepresentation and other violations of the constitutions and laws of Maine, New Hampshire, Massachusetts, and the United States of America.

1

## **JURISDICTION AND VENUE**

This court has subject matter jurisdiction pursuant to 28 USCS § 1331 and 1332; 2 USCS § 2000e-5(t)(3); and 29 USCS § 216 and is based upon both a federal question and Diversity of Citizenship. The jurisdiction of this Court is predicated upon and within Diversity of Citizenship Jurisdiction of the United States District Court pursuant to 28 U.S.C. 1332, and 28 U.S.C. 1441(a) and proceeds under the Rules of Civil Procedure for the United States District Courts.

Venue is properly laid in this Court pursuant to 42 USCS § 2000e-5(3) in that the unlawful employment practices as hereinafter alleged were committed in this District; and 28 USCS § 1391(b) applies and in that the claims as hereinafter set forth arose in this District. Corporate Defendant is a corporation licensed to do business in this District and Diversity of Citizenship exists. This is a claim within Diversity of Citizenship Jurisdiction of this Honorable Court and is of a Diversity of Citizenship nature within the meaning of Rule 8(a) of the Federal Rules of Civil Procedure. Venue is proper in the United States District Court pursuant to 28 U.S.C. 1332, and 28 U.S.C. 1441(a) as the Plaintiff and the Defendants are both citizens of the United States. The Plaintiff is a resident of the Commonwealth of Massachusetts and the Defendant RLD is a corporation duly organized under the laws of the State of Maine, with principal offices within the State of Maine. Upon information and belief, Defendant Williams maintains a domicile in Maine. Upon information and belief, Defendant Peck maintains a domicile in the State of Maine, and is a practicing attorney within the State of Maine. The subject matter of this action took place in the Salem, New Hampshire office of the Defendant RLD. The amount in controversy exceeds seventy five thousand dollars ($75,000.00), exclusive of

costs and interests, and the transactions constituting the civil action occurred within this Judicial District.

## PARTIES

1. Plaintiff, a male individual, is a citizen of the State of Massachusetts, residing at Billerica.

2. Upon information and belief, Defendant, Rangeley Lake Development Co., LLC. ("RLD") is a Maine corporation having principal places of business at 190 Riverside Street, Portland, Maine and offices in New Hampshire.

3. Paul Peck, is an individual, residing in the State of Maine and is an employer within the meaning of 42 USCS § 2000e(b) and 29 USCS § 203(d) in that he is an agent of RLD, acting directly or indirectly in their separate and/or mutual interests in relation to an employee.

4. Perry D. Williams is an individual, residing in the State of Maine and is an employer within the meaning of 42 USCS § 2000e(b) and 29 USCS § 203(d) in that he is an agent of the RLD (RLD's Managing Partner) acting directly or indirectly in their separate and/or mutual interests in relation to an employee.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

5. Within one hundred and eighty (180) days of the occurrence of the last acts of sexual harassment and employment discrimination alleged herein, Plaintiff filed an appropriate Charge of Discrimination with the Equal Employment Opportunity Commission [hereinafter "EEOC"], which was assigned Charge No. 161-2004-00057. The foregoing Charge of Discrimination charged the Defendants with the acts of discrimination and sexual harassment alleged in this Complaint, was duly served upon Defendants, and

afforded the Defendants with an opportunity to participate in administrative reconciliation proceedings through the EEOC. A true and correct copy of the aforementioned Charge of Discrimination is attached to this Complaint as Exhibit "A".

6. After investigating Plaintiff's Charge of Discrimination, the EEOC, through its District Director, issued to Plaintiff a Notice of Right to Sue Letter, which is attached to this Complaint as Exhibit "B".

7. In full compliance with the provisions of 42 USCS. § 2000e(5), Plaintiff has exhausted all available administrative remedies and has timely filed this civil action within ninety (90) days of her receipt of the aforementioned Right to Sue Letter.

## FACTUAL ALLEGATIONS

8. In or about April and May of 2003, the Plaintiff and his wife received The Resort Trades Magazine with a classified advertisement for employment placed by Defendant RLD, its agents, representatives and/or employees.

9. Upon information and belief, The Resort Trades Magazine is a trade publication that is published nationwide with substantial subscribers in Massachusetts. The Plaintiff and his wife received such publication at their then home in Stoneham, Massachusetts.

10. Based upon the employment advertisement received at his home in Massachusetts, on or about May 20, 2003, Plaintiff, Kevin Hurley ("Hurley"), traveled to Portland Maine and met with one of Defendant's owners, Perry Williams ("Williams") and Defendant's RLD's Director of Sales, Patrick Warner ("Warner") to discuss an employment opportunity as Sales Manager.

11. At this meeting Plaintiff was offered a Sales Manager position, as an independent contractor, which he accepted. He explained that he knew of other potential sales candidates including his wife, Diane.

12. Also, at that time, Plaintiff and RLD, its agents, representatives and employees discussed opening an office in Woburn or Stoneham, Massachusetts. After initial investigation, Plaintiff informed RLD that the market in the Stoneham/Woburn area was saturated and they should look into another location. An office in Salem, New Hampshire was decided upon.

13. On or about, June 18, 2003 the Defendant RLD hired Plaintiff and Warner sent him an e-mail stipulating Kevin's salary of One Hundred Sixty Four Thousand ($164,000.00) per year for a five year project, agreed upon override and the parties executed an independent contractor agreement.

14. Subsequently, the Plaintiff was asked to travel to Portland Maine, with his wife, for another meeting. Paul Peck ("Peck") RLD's attorney, Williams, and Warner attended.

15. Plaintiff worked closely with several RLD employees, including Patrick Warner ("Warner"), Verification Officer Laura Moore ("Moore"), and, upon information and belief, Portland Sales Manager Allen ("Allen"). Other co-workers included Ron Ferrar ("Ferrar"), Karen Gover ("Gover"), Lynette Kinzel ("Kinzel"), Tammy Hill ("Hill"), the Director of Human Resources, Joan Hamsted ("Hamsted") and another manager/supervisor, Troy ("Troy"). Upon information and belief, all of these employees were subsequently terminated, with the exception of Warner.

16. On or about September 16, 2003, the Plaintiff was instructed to report to Defendant RLD's Salem, New Hampshire office to begin interviewing perspective sales personnel.

This was while Defendant RLD was running advertisements and its office was under construction.

17. On or about September 30, 2003 the Plaintiff began hiring office staff. Warner was present and specifically instructed the Plaintiff to avoid hiring certain candidates that appeared qualified, in the Plaintiff's opinion, because Warner stated that they were, "too old, fat and/or ugly."

18. The Plaintiff hired a female employee, Tracy ("Tracy") and was subsequently instructed by Warner to "let her go". The Plaintiff refused because he believed that she was the most qualified for the job. Upon information and belief Warner's assistant fired her.

19. Sometime thereafter, in or about late September or early October 2003, the Plaintiff was instructed by Warner to hire Gover because "her tits were nice." The Plaintiff was also instructed to hire Robin Lauwer ("Lauwer") because she has a "nice ass".

20. Throughout this process Warner made it very clear to the Plaintiff that applicant job skills were not important, look were. The Plaintiff was made to feel uncomfortable by Warner's conduct and continuous lewd remarks. However, he was assured that he would be able to run the Salem office as he saw fit.

21. Later that same day, the Plaintiff suggested to Warner that he was opening himself up for possible sexual harassment charges based on this conduct. Warner responded to the Plaintiff that, "he never wanted to hear the words sexual harassment again, because he was charged with sexual harassment when he worked for Bluegreen Resorts in Myrtle Beach."

22. On October 11, 2003 the Plaintiff headed his first sales meeting at Defendant's Salem, New Hampshire location. At that time, Warner stated to everyone, "now that the fucking meeting is fucking done, you all better fucking sell something today." The Plaintiff was shocked and dismayed.

23. Upon information and belief, the next day Plaintiff's wife, Diane, who also worked at the Defendant's New Hampshire location, was approached by another employee, Kinsel, regarding concern over employee Gover. Gover did not show up for work on that day and did not call in or contact the office. Kinsel stated that on October 11, 2003 Warner and Troy made sexual advances upon Gover to persuade her to go out with them. Gover expressed how uncomfortable this made her feel. Kinsel also told Plaintiff's wife, that Warner and Troy had sexually propositioned her, but she told them that she was married and not interested. Kinsel informed Plaintiff's wife, that she was afraid she would lose her job for seeking her advice. Plaintiff's wife advised her that sexual harassment was against the law and that her job was not in jeopardy.

24. Later, that day, Troy made lewd and snide comments about Gover in front of Kinsel. Kinsel told him that his conduct towards Gover was illegal, that he should not treat employees in such a manner, and she knew her rights regarding sexual harassment, after speaking with the Plaintiff's wife.

25. Troy informed Warner of the aforementioned conversation, and an employee meeting was convened.

26. At the meeting Warner accused the Plaintiff's wife of starting problems, stated that it was not her place to say anything with respect to the rights of others. Warner and Troy denied any wrongdoing. Warner also specifically stated that, "This is my show. This is

the way it is. I better never hear anyone mention sexual harassment, and no more talk of sexual harassment would be tolerated. Even the mere mention of the subject will not be tolerated." After stating this Warner turned to Kinsel and asked, "Are we clear?"

27. Upon information and belief, Plaintiff asserts that Gover never returned to work.

28. On that same day, only three tours were held and the Plaintiff's wife sold one of them.

29. Approximately one week later Plaintiff was informed by Williams, Peck and Warner that thy had changed their mind and his wife would only be paid One Hundred, Seventy-Five Dollars ($175.00) in commission for her sale, not the previously agreed upon Three Hundred Dollars ($300.00). The Plaintiff explained that "Diane would probably not agree." At that time the Plaintiff was instructed to replace his wife.

30. On or about October 19, 2003 the Defendants wrongfully terminated the Plaintiff's wife.

31. Warner informed the Plaintiff that his wife had quit. The Plaintiff told him that she had merely left for the night due to the lack of work and commissions. Warner said, "Well she's fired anyway." Then, Warner asked the Plaintiff if her firing was going to affect his performance. The Plaintiff assured him it would not.

32. On or about October 25, 2003 Warner informed the Plaintiff that he would preside over the sales meeting. He then told everyone a story about when he worked at Myrtle Beach and that, "a fat black woman offered Troy and Warner oral sex in lieu of the down payment for a time share week." Moore, Lauwer, John Pennell ("Pennell"), Andy Lamby ("Lamby"), Charlie Mateson ("Mateson") and Troy were all present. Warner also stated, "Laura I know you won't be offended, and Robin I hope this doesn't offend you."

33. After the meeting the Plaintiff asked to speak with Warner in his office. During the meeting the Plaintiff told Warner that talking about oral sex was unprofessional, unacceptable, and was cause for a sexual harassment suit and that he should refrain from such language and topics in the future. Warner replied, "Don't ever tell me what to do or you'll be out of here in a heartbeat."

34. Upon information and belief, the following week the tour flow was still terrible and salesman morale was low.

35. On or about Saturday, November 1, 2003, the Plaintiff deposited his paycheck for One Thousand One Hundred Dollars ($1,100.00).

36. The following day, Warner called the Plaintiff at the office and told him to come in early on Monday at 3 p.m., for a meeting.

37. On or about Monday, November 3, 2003 the Plaintiff showed up and Warner said that he was fired for taking an hour and a half lunch the day before (Sunday). The Plaintiff inquired to Warner, "How can you fire me for something that Troy has done on several occasions? But, if this was a problem, it will not happen again." Warner stated, "You're fired anyway. I don't have to explain, get your shit and get out. And, by the way, the company does not owe you any more money." The Plaintiff insisted the company did owe him and left the office.

38. The Defendant wrongfully terminated the Plaintiff on November 3, 2003.

39. Upon information and belief, that evening, Warner introduced Rick Chapman ("Chapman"), another friend from Myrtle Beach, to the sales staff. The Plaintiff's replacement was already there the week before, ready to step in.

40. On or about Friday, November 6, 2003, Fleet Bank informed the Plaintiff and his wife their checks were overdrawn because of the stop payment on the Plaintiff's paycheck. This check was based on the last week of the Plaintiff's employment.

## COUNT I
## BREACH OF CONTRACT

41. Plaintiff re-alleges the foregoing Paragraphs 1-40 as if set forth again here.

42. The Defendant and the Plaintiff executed a valid, enforceable contract.

43. The Defendant, through the conduct of its agents, representatives, and employees materially breached its contract by making it impossible for the Plaintiff to satisfy his contractual terms.

44. The Defendant, through the conduct of its agents, representatives, and employees materially breached its contract by failing to tender substantial and agreed upon consideration, even after the Plaintiff performed his duties arising therefrom.

## COUNT II
## BREACH OF CONTRACT ACCOMPANIED BY FRAUDULENT ACT

45. The Plaintiff re-alleges the foregoing Paragraphs 1-44 as if set forth again here.

46. Defendant breached its contract with the Plaintiff with fraudulent intent accompanied by fraudulent acts.

47. Defendant knowingly allowed its supervisors and managers to deal with the Plaintiff in a manner that directly conflicts and completely contravenes employment sexual harassment and discrimination policies. Said dealings have been dishonest in fact, unfair, and/or have involved unlawful appropriation.

48. The Plaintiff was specifically told not to notify management of any harassment and that the subject of sexual harassment should not be even brought up.

49. The Defendant wrongfully disciplined the Plaintiff for asserting the rights of employees not to be sexually harassed.

50. The Defendant RLD rescinded the Plaintiff's last paycheck despite owing said monies to him.

51. The Plaintiff has suffered damages as a result.

52. The Plaintiff seeks actual and punitive damages to redress his damages.

## COUNT III
## WRONGFUL TERMINATION

53. The Plaintiff re-alleges the foregoing Paragraphs 1-52 as if set forth again here.

54. The Plaintiff contends that the Defendant wrongfully terminated him.

## COUNT IV
## DETRIMENTAL RELIANCE

55. The Plaintiff re-alleges the foregoing Paragraphs 1-54 as if set forth again here.

56. The Plaintiff relied on the Defendants', and its agents, representatives, and employees, misrepresentations to his great detriment.

57. The Plaintiff relied on the promises of the Defendant and its agents, representatives, and employees, all to his great detriment.

## COUNT V
## INTENTIONAL (RECKLESS) INFLICTION OF EMOTIONAL DISTRESS

58. The Plaintiff re-alleges the foregoing Paragraphs 1-57 as if set forth again here.

59. The Defendant, by its actions, intended to cause and/or recklessly caused the Plaintiff to suffer emotional distress and/or knew or should have known, that severe emotional distress was likely to result based on its, and its agents, aforementioned conduct.

60. The actions of the Defendant were of such an egregious nature that no reasonable person should anticipate or be required to endure.

61. As a result of said misrepresentations, Plaintiff has suffered anxiety, weight fluctuations, loss of trust in male co-workers and the workplace, and has experienced extreme mental anguish, depression, fear of being female in a male dominated work environment, and declining mental health.

62. Based on the Defendant's, and its representatives, agents, and employees, intentional discriminatory conduct, the Plaintiff asserts that the Defendant's actions were beyond reasonable bounds, and therefore beyond the bounds of the employer/employee relationship.

## COUNT VI
## GOOD FAITH AND FAIR DEALING

63. The Plaintiff re-alleges the foregoing Paragraphs 1-62 as if set forth again here.

64. Said actions by Defendant were wrongful, intentional, and against public policy.

65. Defendant violated its duty of good faith and fair dealing.

## COUNT VII
## TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIP

66. The Plaintiff re-alleges the foregoing Paragraphs 1-65 as if set forth again here.

67. Defendant, through its agents, tortiously caused interference with Plaintiff's contractual business relations, by terminating the agreement surreptitiously, without basis and for reasons violating the laws and constitutions of Maine, New Hampshire, and the United States of America causing the discontinuance of his established and business relationship with Defendant and the income generated and promised therefrom.

68. Therefore, the Defendant interfered with the prior, established contractual relationships, all to the Plaintiff's detriment and great damage.

WHEREFORE, having fully set forth in her Complaint, the Plaintiff prays the jury award him all available relief, including but not limited to the following:

1. Award the Plaintiff appropriate compensatory, consequential, and punitive damages against the Defendant to compensate him for monetary loss, lost wages, humiliation, embarrassment, emotional distress, and loss of equal employment rights and litigation costs, caused by Defendants' breaches of its duties to the Plaintiff;

2. Award such other and further relief as the Court deems just and proper.

### JURY DEMAND

Plaintiff demands a trial by jury on all counts.

RESPECTFULLY SUBMITTED,
Kevin Hurley
By his attorneys,

**Dated:** August 25, 2004

Richard C. Chambers, Jr.
BBO#651251
Chambers Law Offices
855R Broadway, Suite 101
Saugus, MA 01906
Tel: (781) 231-9432

- and -

Paul L. Kenny
BBO# 268820
42 High Street
Medford, MA 02155
Tel: (781) 393-6603

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

1. Title of case (name of first party on each side only) __Kevin Hurley v. Rangeley Lake Development Company, LLC., et al__

2. Category in which the case belongs based upon the numbered nature of suit code listed on the civil cover sheet. (See local rule 40.1(a)(1)).

   ☐ I.    160, 410, 470, R.23, REGARDLESS OF NATURE OF SUIT.

   ☐ II.   195, 368, 400, 440, 441-444, 540, 550, 555, 625, 710, 720, 730, 740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.
          *Also complete AO 120 or AO 121 for patent, trademark or copyright cases

   ☑ III.  110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310, 315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371, 380, 385, 450, 891.

   ☐ IV.   220, 422, 423, 430, 460, 510, 530, 610, 620, 630, 640, 650, 660, 690, 810, 861-865, 870, 871, 875, 900.

   ☐ V.    150, 152, 153.

   04 11892 NG

3. Title and number, if any, of related cases. (See local rule 40.1(g)). If more than one prior related case has been filed in this district please indicate the title and number of the first filed case in this court.
   __Diane Hurley v. Rangeley Lake Development Company, LLC., et al     DOCKET NUMBER UNKNOWN__

4. Has a prior action between the same parties and based on the same claim ever been filed in this court?
   YES ☐   NO ☑

5. Does the complaint in this case question the constitutionality of an act of congress affecting the public interest? (See 28 USC §2403)
   YES ☐   NO ☑

   If so, is the U.S.A. or an officer, agent or employee of the U.S. a party?
   YES ☐   NO ☑

6. Is this case required to be heard and determined by a district court of three judges pursuant to title 28 USC §2284?
   YES ☐   NO ☑

7. Do all of the parties in this action, excluding governmental agencies of the united states and the Commonwealth of Massachusetts ("governmental agencies"), residing in Massachusetts reside in the same division? - (See Local Rule 40.1(d)).
   YES ☐   NO ☑

   A. If yes, in which division do all of the non-governmental parties reside?
      Eastern Division ☐   Central Division ☐   Western Division ☐

   B. If no, in which division do the majority of the plaintiffs or the only parties, excluding governmental agencies, residing in Massachusetts reside?
      Eastern Division ☑   Central Division ☐   Western Division ☐

8. If filing a Notice of Removal - are there any motions pending in the state court requiring the attention of this Court? (If yes, submit a separate sheet identifying the motions)
   YES ☐   NO ☑

(PLEASE TYPE OR PRINT)
ATTORNEY'S NAME __Richard C. Chambers, Jr.__
ADDRESS __855R Broadway, Suite 101, Saugus, MA 01906__
TELEPHONE NO. __781-231-9432__

(Coversheetlocal.wpd - 10/17/02)

JS 44 (Rev. 3/99)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
Kevin Hurley

### DEFENDANTS
Rangeley Lake Development Co., LLC
Paul Peck and Perry D. Williams

(b) County of Residence of First Listed Plaintiff **Middlesex**
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

(c) Attorney's (Firm Name, Address, and Telephone Number)
Richard Chambers Jr. 855R Broadway Ste 101
Saugus, MA 01906  781-231-9432 + Paul Kenny
42 High St. Medford, MA 02155  781-396-6603

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☐ 2 U.S. Government Defendant
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☒ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

**CONTRACT**
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☒ 190 Other Contract
- ☐ 195 Contract Product Liability

**TORTS — PERSONAL INJURY**
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury

**TORTS — PERSONAL INJURY**
- ☐ 362 Personal Injury— Med. Malpractice
- ☐ 365 Personal Injury — Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**REAL PROPERTY**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**CIVIL RIGHTS**
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/Accommodations
- ☐ 444 Welfare
- ☐ 440 Other Civil Rights

**PRISONER PETITIONS**
- ☐ 510 Motions to Vacate Sentence
- Habeas Corpus:
- ☐ 530 General
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

**FORFEITURE/PENALTY**
- ☐ 610 Agriculture
- ☐ 620 Other Food & Drug
- ☐ 625 Drug Related Seizure of Property 21 USC
- ☐ 630 Liquor Laws
- ☐ 640 R.R. & Truck
- ☐ 650 Airline Regs.
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

**LABOR**
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Mgmt. Relations
- ☐ 730 Labor/Mgmt. Reporting & Disclosure Act
- ☐ 740 Railway Labor Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Empl. Ret. Inc. Security Act

**BANKRUPTCY**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

**SOCIAL SECURITY**
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce/ICC Rates/etc.
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 895 Freedom of Information Act
- ☐ 900 Appeal of Fee Determination Under Equal Access to Justice
- ☐ 950 Constitutionality of State Statutes
- ☐ 890 Other Statutory Actions

## V. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
(Cite the U.S. Civil Statute under which you are filing and write brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

28 USC 1332  Diversity of   Breach of Contract, Tortious Interference with Business
28 U.S.C. 1441 (a) Citizenship  Relations, Wrongful Termination, Intentional Infliction of Emotional Distress

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ _____

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions): Diane Hurley v. Rangeley Lake Development Co., LLC et al
JUDGE _____  DOCKET NUMBER **UNKNOWN**

DATE **8/27/04**
SIGNATURE OF ATTORNEY OF RECORD  *Richard C. Chambers Jr.*

FOR OFFICE USE ONLY

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____